Argued October 5, 1976, affirmed February 17, 1977

CASTOR, *Respondent,*

*v.*

ERLANDSON, *Appellant.*

CASTOR et ux, *Respondents,*

*v.*

ERLANDSON, *Appellant.*

(Nos. 83650, 83651, SC 24250, 24251)

560 P2d 267

Robert J. Morgan, Milwaukie, argued the cause for appellant. Ralf H. Erlandson, Milwaukie, filed briefs pro per.

Lauren M. Underwood, of Acker, Underwood, Beers & Smith, Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and McAllister,* Tongue, Howell, Bryson and Sloper, Justices.

DENECKE, C. J.

---

*McAllister, J., retired December 31, 1976.

## DENECKE, C. J.

The jury awarded plaintiffs $8,500 general damages and $30,000 punitive damages in these consolidated fraud actions. The defendant appeals.

The defendant has made seven assignments of error, none of which comply with the Rules of Procedure of the Supreme Court and Court of Appeals. Rule 6.18 states:

> "* * * The assignment of error must be specific and must set out verbatim the pertinent portions of the record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered * * *." (Emphasis added.)

This has been the rule for many years, yet it is frequently not observed. Shepard's Citator cites 27 decisions of this court and the Oregon Court of Appeals in the last six years in which violations of Rule 6.18 are referred to. Previously, we have been relatively lenient and have not imposed the sanction authorized by this rule. However, the constantly increasing caseload of this court makes the enforcement of this rule a necessity. *Shields v. Campbell,* 277 Or 71, 559 P2d 1275 (decided January 27, 1977). In *Elvalsons v. Industrial Covers, Inc.,* 269 Or 441, 445, 525 P2d 105 (1974), we noted that we have on occasion refused to consider assignments of error improperly made.

■■ The purpose of the rule is to inform the appellate court of the precise motion and the court's exact ruling. The assignment should also contain a reference to where the motion and ruling appear in the record. Without such direction the court must search the record in an attempt to determine what ruling of the trial court the appellant is referring to.

The defendant's first assignment of error is:

> "The Court committed error in its failure to dismiss respondent's action on the grounds that such action was barred by the running of the statute of limitations."

No reference is made as to where in the record this error allegedly occurred.

In their answering brief plaintiffs urged us to not consider defendant's assignment of error because of the violations of Rule 6.18. In his reply brief defendant acknowledged his error and attempted to comply. However, his attempt, as concerns the first assignment of error, continues to leave us in doubt.

As plaintiffs point out, defendant's contention as to when the statute of limitations began to run varied before, during trial, and on appeal. As quoted above, defendant, in his opening brief, assigns as error the trial court's failure to dismiss plaintiffs' action. In his reply under this assignment of error defendant sets out what he terms his motion for a directed verdict. From other parts of the transcript, we believe this was a motion for an involuntary nonsuit. In that motion he contends the statute commenced running June 25, 1971. This motion was denied.

He also sets out in his reply brief a written motion for dismissal which is grounded on the contention that the statute began running on January 1, 1971, a different date than that relied upon in the motion for nonsuit. There is no written order denying this motion. The trial court verbally denied "the motion to dismiss"; however, we cannot ascertain whether the court was referring to the written motion to dismiss, another motion to dismiss which had been filed, or to the motion for an involuntary nonsuit.

■ Because of the defendant's failure to comply with Rule 6.18, we will not consider defendant's first assignment of error.

As stated, the defendant did not comply with Rule 6.18 in preparing any of his assignments of error. However, because of defendant's attempt to correct this failure in his reply brief, we can ascertain what defendant is contending in his other assignments of error and, therefore, we will consider them. In the

future, if an appellant fails to comply with the court rules, we will take whatever action appears appropriate.

The following was the evidence: The defendant represented the Jacksons as agent and attorney in attempting to sell parcels of Jacksons' 100-acre tract. On November 10, 1969, the Jacksons and plaintiffs entered into a real estate sales contract whereby the Jacksons agreed to sell a parcel to plaintiffs. The contract provided that the Jacksons would furnish a title insurance policy on January 1, 1971, over 13 months after the date of the contract. When plaintiffs asked defendant why the long delay he replied that the Jacksons were having some financial problems, but with plaintiffs' down payment and monthly payments these could be resolved and plaintiffs given good title. Plaintiffs testified that defendant did not tell them there were liens on the property. There were liens against the entire tract, greatly exceeding any sums plaintiffs were required to pay before January 1, 1971.

The title policy was not furnished at any time. Because the liens on the property were not released, the lienholders commenced a foreclosure suit, served plaintiffs, and obtained a decree foreclosing plaintiffs' interest.

The defendant assigns as error the trial court's overruling of his demurrer. The defendant demurred upon the ground that the statute of limitations had run. The complaint alleges that about November 20, 1969, the defendant made the misrepresentations. The typed complaint alleged that plaintiffs "did not discover their falsity until they were served with Summons and Complaint in a suit to foreclose the mortgage * * * on or about June 25, 1971." At some time—whether before or after the filing of the demurrer or the argument on the demurrer we do not know—plaintiffs amended by handwritten interlineation to allege that the plaintiffs discovered the fraud "several days after" the service of the foreclosure

complaint. The trial court overruled the demurrer. The case was tried on a second amended complaint which alleged that the plaintiffs discovered the fraud "sometime after" the foreclosure complaint was served on June 25, 1971.

The difference between June 25, 1971, and "sometime after" is critical. The action was commenced July 3, 1973. The statute of limitations is two years from the date when the party discovered or should have discovered the fraud.

Defendant renewed his demurrer several times during the trial. However, he overlooked the change alleging discovery "sometime after" service of the foreclosure complaint and continued to argue that plaintiffs alleged that plaintiffs discovered the fraud when they were served with the foreclosure complaint.[1]

On appeal defendant apparently realized the significance of the change made in plaintiffs' complaint. Defendant now argues that the demurrer should have been sustained because "a complaint filed after the period provided by statute for the bringing of the action must negative lack of diligence in the discovery of the fraud," citing *Huycke v. Latourette,* 215 Or 173, 177, 332 P2d 606 (1958). This ground was never advanced at any time to the trial court. We will not reverse the ruling of a trial court overruling a demurrer upon a ground not raised in the trial court. *Friesen v. Fuiten,* 257 Or 221, 231, 478 P2d 372 (1970).

The trial court correctly overruled the demurrer.

Defendant assigns as error the trial court's allowing plaintiffs' motion to amend their complaint.

Plaintiffs alleged that the defendant represented that the Jacksons could convey good title but that this was false and defendant knew it was false. Plaintiffs

---

[1] There was evidence supporting plaintiffs' allegations that they did not discover the fraud until some time after service of the foreclosure complaint.

also alleged that the defendant had a duty to disclose the full extent of the indebtedness. After the plaintiffs introduced their case in chief they moved to amend the above allegations by adding the following: "Defendant did not disclose their information but advised plaintiff only that sellers had some financial problem." Also, plaintiffs amended the allegation: "In reliance on defendant's misrepresentations" to add "and concealment of the true facts."

■ Plaintiffs' allegations of fraudulent "representations" and "duty to disclose" were sufficient to put defendant on notice as to the active misrepresentations and concealment theories in plaintiffs' complaint. Moreover, evidence was admitted by both parties on the issue of concealment without any objections being made by defendant. The trial court, therefore, properly exercised its discretion in allowing the amendment.

The trial court denied defendant's motion for an involuntary nonsuit. The ground of the motion was "the failure to show damages." Defendant assigns the denial as error.

■ The trial court was correct in denying defendant's motion. The defendant conceded: "* * * their [plaintiffs'] only loss from this thing was what they had to pay extra." We garner that the defendant's contention really is that the measure of damages plaintiffs were seeking is incorrect. That is not a ground for nonsuit or directed verdict.

The defendant contends the trial court erred in not granting his motion for a new trial on the ground that plaintiffs' counsel made improper remarks in his closing argument.

■ Denial of a motion for new trial, which motion is based upon rulings made during the trial, is not a proper assignment of error. *Blue Ribbon Bldgs. v. Struthers,* 276 Or 1199, 557 P2d 1350 (1976).

[ 153 ]

The defendant assigns as error the admission of certain testimony of witnesses Cain and Westbrook.

The Jacksons were attempting to sell other parcels to various buyers. The liens were all of the Jacksons' property. A witness Weis, called by the plaintiffs, testified that in 1969 he contracted to buy a parcel of the Jacksons' property. He testified he too was to receive a title policy long after he commenced making payments. He testified, without objection, that the defendant did not tell him about any liens on the property.

Plaintiffs then called witnesses Cain and Westbrook. They testified that in June 1971 they contracted to buy other parcels of the Jacksons' property. They were asked if defendant had told them about any liens on the property. Over defendant's objection that the testimony would be too remote, the trial court admitted the testimony and this is claimed as error.

Without objection, all three of these witnesses testified that they subsequently lost their property when the lienholders foreclosed.

Although defendant's objection was solely upon the ground of remoteness, defendant now contends that testimony of another misrepresentation is inadmissible whether the testimony is remote in time or not. Assuming defendant can now raise this contention, it *is not correct.*

■ Defendant denied telling the plaintiffs there were no liens or concealing this from them. Therefore, an issue was,—did defendant make a misrepresentation? In *Karsun v. Kelley,* 258 Or 155, 163, 482 P2d 533 (1971), we adopted the statement of McCormick, as follows:

> " 'If the actual making of the misrepresentations charged in the suit is at issue, then to show the party's *conduct* in making the representations or committing the other acts of fraud as alleged, it is competent to prove other representations *closely similar* in purport or other

fraudulent acts, when they may be found to be *parts of a larger or continuing plan or design,* of which the acts or misrepresentations in suit may also be found to be an intended part or object.' (Emphasis added.)" McCormick, Evidence § 164, 345 (1954).

We reaffirmed this principle in *Beecher v. Montgomery Ward & Co.,* 267 Or 496, 501, 517 P2d 667 (1973).

■ As far as the charge of remoteness, the trial court was correct in admitting the testimony. Identical representations concerning the same property made just before the representation in issue and after it, although over a year after, is relevant evidence of a common design.

The last assignment of error is that the trial court erred in striking testimony of Jackson. Jackson was declared bankrupt and was testifying about a hearing in the bankruptcy court. He testified:

> "He [bankruptcy judge] told them [plaintiffs' attorney and Smuckers, a lienholder] to get together and to come to an agreement on that—Smuckers to honor the contract and they was to reach a satisfactory price on the remaining acre for sale and to go back there to see him that evening. We were to work something out and to go back that evening by 4:00 o'clock for the bankruptcy court was going to take the property back."

■ The testimony is irrelevant. If the parties reached some agreement, such testimony might be relevant on the issue of damages. However, what someone, judge or otherwise, told persons to do has no relevancy in the context of this case.

Affirmed.